Linda M. Deola
MORRISON, MOTL AND SHERWOOD, P.L.L.P.
401 North Last Chance Gulch
Helena, Montana 59601
(406) 442-3261
(406) 443-7294 facsimile

Kalju Nekvasil
GOODMAN & NEKVASIL, P.A.
14020 Roosevelt Blvd., Suite 808
P.O. Box 17709
Clearwater, Florida 33762
(727) 524-8486
(727) 524-8786
*Attorneys for Respondents/Counter-Petitioners*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| WAVELAND CAPITAL PARTNERS, LLC,<br><br>Petitioner/Counter-Respondent,<br><br>and MELVIN T. DAY, II,<br><br>Counter-Respondent,<br><br>v.<br><br>RANDALL A. TOMMERUP, Individually and as Sole Member of R. TOMMERUP-EXECUTIVE PARK, LLC, and R. TOMMERUP-ARROWHEAD, LLC, and HELEN E. TOMMERUP, Individually and as Sole Member of H. TOMMERUP-EXECUTIVE PARK, LLC, and H. TOMMERUP-ARROWHEAD, LLC,<br><br>Respondents/Counter-Petitioners. | Case No. CV-12-26-H-CCL<br><br>**RESPONDENTS'/ COUNTER-PETITIONERS' BRIEF IN SUPPORT OF THEIR MOTION TO CONFIRM ARBITRATION AWARD AND IN OPPOSITION TO PETITIONER/COUNTER-RESPONDENT'S PETITION TO VACATE ARBITRATION AWARD** |
| --- | --- |

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

A.    Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    Manifest Disregard of the Law is not a Valid Basis to Vacate an
      Arbitration Award.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

C.    Waveland has Not Established that the Arbitrators Manifestly
      Disregarded the Law Regarding the Statute of Repose for Federal
      Securities Law Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      1.    The "Manifest Disregard" Standard Requires Proof that the
            Arbitrators Correctly Stated the Applicable Law and Intentionally
            Disregarded it.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      2.    Waveland has Not Established that the Arbitrators Correctly
            Stated the Five-Year Statute of Repose for Federal Securities Law
            Claims and Intentionally Ignored it... . . . . . . . . . . . . . . . . . . . . 5

      3.    The Arbitrators Could have had Many Reasons for Their Award.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      4.    The Finding of Negligent Supervision Could have Been a
            Common Law Finding not Subject to the Five-Year Statute of
            Repose.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      5.    Waveland has not Established that All of the Tommerups'
            Statutory and Common Law Claims were Time-Barred... . . . . . 9

6.  The Arbitrators Could have Concluded that the Purchase of the DBSI Arrowhead Investment Occurred in February 2006, when the Investment Closed and that the Tommerups' Claims for Overconcentration were Complete at that Time, Less than Five Years before the Filing of the Arbitration Claim.. . . . . . . . . . 14

7.  The Arbitrators Could Reasonably have Concluded that Statutes of Limitation Apply only in Court, not in Arbitration.. . . . . . 17

D.  Waveland has not Established that the Arbitrators Manifestly Disregarded the Law on Private Rights of Action for Violations of Self-Regulatory Organization Rules.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Certificate of Compliance with Local Rule 7.1(d)(2)(E). . . . . . . . . . . . . . . . . . . . 27

Table of Exhibits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## Cases

Biller v. Toyota Motor Corp., 668 F.3d 655 (9th Cir. 2012). . . . . . . . . . . . . . . . . 4

Bosack v. Soward, 586 F.3d 1096 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . 5, 6

Broom v. Morgan Stanley DW, 169 Wash. 2d 231, 236 P.3d 182 (2010). . . . 18, 21

Cameron v. Griffith, 370 S.E.2d 704 (N.C. Ct. App. 1988). . . . . . . . . . . . . . . . . 20

Charlesworth v. Reyns, 113 P.3d 1031, 1037 (Utah App. 2005). . . . . . . . . . . . . . 13

Chriske v. State ex rel. Dept. of Corrections and Institutions, 357 Mont. 28, 235 P.3d 588 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Citigroup Global Mkts., Inc. v. Bacon, 562 F.3d 349 (5th Cir. 2009) . . . . . . . . . 3

Collins v. D.R. Horton, Inc., 505 F.3d 874 (9th Cir. 2007) . . . . . . . . . . . . . . . 5, 21

Dahl v. Harrison, 265 P.3d 139 (Utah App. 2011). . . . . . . . . . . . . . . . . . . . . . . . 18

David P. Coldesina, D.D.S. v. Estate of Simper 407 F.3d 1126 (10th Cir. 2005). . 8

Dayco Corp. v. Fred T. Roberts and Co., 192 Conn. 497 472 A.2d 780 (1984). . 20

Doran v. Petroleum Management Corp., 576 F.2d 91 (5th Cir. 1978). . . . . . . . . . 15

Ehrman v. Kaufman, Vidal, Hileman & Ramlow, PC, 358 Mont. 519, 246 P.3d 1048 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Elder v. Clawson, 14 Utah 2d 379, 384 P.2d 802 (1963). . . . . . . . . . . . . . . . . . . 13

Fields v. Mountain States Tel. & Tel. Co., 754 P.2d 677 (Utah App. 1988). . . . . 19

Geo. Knight & Co. v. Watson Wyatt & Co., 170 F.3d 210 (1st Cir. 1999). . . . . . 11

GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc., 895 F.2d 729 (11th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Greene v. Morgan, Theeler, Cogley & Petersen, 575 N.W.2d 457 (S.D. 1998). . 11

Hall Street Assoc. v. Mattel, Inc., 552 U.S. 576 (2008). . . . . . . . . . . . . . . . . . . . . 3

Hannon v. Avis Rent A Car System, 107 F. Supp. 2d 1256 (D. Mont. 2000). . . . . 8

Har-Mar, Inc. v. Thorsen & Thorshov, 300 Minn. 149, 218 N.W.2d 751 (1974). 20

In reAmerican Exp. Financial Advisors Sec. Litig., 672 F.3d 113 (2d Cir. 2011). 19

Jablon v. Dean Witter & Co., 614 F.2d 677 (9th Cir. 1980). . . . . . . . . . . . . 21, 22

John F. Baumer vs. J.E. Liss & Co, 2001 WL 1395789 (NASD Reg. Arb. Oct. 4, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Johnson-Bowles Co. v. Division of Sec. of Dep't of Commerce, 829 P.2d 101 (Utah App. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634  (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Lewiston Firefighters Assoc., Local 785 v. City of Lewiston, 354 A.2d 154 (Me. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

McLernon v. Source Int'l, Inc., 701 F. Supp. 1422 (E.D. Wis. 1988). . . . . . . . . . 15

Mihara v. Dean Witter & Co., Inc., 619 F.2d 814 (9th Cir. 1980). . . . . . . . . . . . 24

Miley v. Oppenheimer & Co., 637 F.2d 319 (5th Cir. 1981). . . . . . . . . . . . . . . . . 25

NCR Corp. v. CBS Liquor Control, 874 F. Supp. 168 (S.D. Ohio 1993). . . . . . . 20

Northern Montana Hosp. v. Knight, 248 Mont. 310, 811 P.2d 1276 (1991). . . . . 25

Poweragent Inc. v. Electronic Data Systems, 358 F.3d 1187 (9th Cir. 2004). . . . . 4

Raymond James Financial Services, Inc. v. Phillips, 2011 WL 5555691  (Fla. Dist. Ct. App. Nov. 16, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Rimensburger v. Rimensburger, 841 P.2d 709 (Utah App. 1992). . . . . . . . . . . . . 19

Rossell v. Volkswagen of Am., 147 Ariz. 160, 709 P.2d 517 (1985). . . . . . . . . . 25

Rostad and Rostad Corp. v. Investment Management & Research, Inc., 923 F.2d 694 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 8

Seale v. Gowans, 923 P.2d 1361 (Utah 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Shafnacker v. Raymond James, 425 Mass. 724, 683 N.E.2d 662 (1997). . . . . . . . 20

Sollberger v. Wachovia Securities, LLC, 2010  WL 2674456 (C.D. Cal. June 30, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687 (2d Cir. 1952). . . . . . . . 20

Stanley L. and Carolyn M. Watkins Trust v. Lacosta  321 Mont. 432, 92 P.3d 620 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Stephen T. Rangen, Exchange Act Release No. 38,486, 64 S.E.C. Docket 628, 1997 WL 163991 (April 8, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Stolt-Nielsen S.A. v. AnimalFeeds Int'l, 130 S. Ct. 1758 (2010) . . . . . . . . . . . . . 3

Tallman v. City of Hurricane, 985 P.2d 892 (Utah 1999) . . . . . . . . . . . . . . . . . . 25

Thiele v. Davidson, 440 F. Supp. 585 (M.D. Fla. 1977). . . . . . . . . . . . . . . . . . . . 15

TLI, Inc. v. United States, 100 F.3d 424 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . 19

Waveland Capital Partners, LLC v. Tommerup, 2012 WL 70572 (D. Mont. Jan. 6, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Statutes & Rules

§ 10, Securities Exchange Act of 1934. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

§ 20, Securities Exchange Act of 1934. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

9 U.S.C. § 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1658(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Montana Securities Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 14, 18

Montana Unfair Trade Practices and Consumer Protection Act. . . . . . . . . . 7, 13, 23

§ 27-1-102(2), MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

§ 27-2-202, MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 27-2-203, MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

§ 27-2-204, MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

§ 27-2-211, MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

§ 30-10-307(5), MCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

Utah Code Ann. § 61-1-22(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

Utah Code Ann. § 78B-2-305(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

Utah Code Ann. § 78B-2-307. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

Utah Code Ann. § 78B-2-309. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

Federal Rule of Civil Procedure 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Utah Rule of Civil Procedure 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

FINRA Rule 2111. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

NASD Rule 2310.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24, 26

NASD Rules of Fair Practice, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

NYSE Rule 405. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## **Other Authorities**

Annotation, Statute of Limitations as Bar to Arbitration under Agreement, 94 ALR 3d 533, § 2 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Order Granting Approval of a Proposed Rule Change to Adopt FINRA Rules 2090 (Know Your Customer) and 2111 (Suitability), Exchange Act Release No. 63,325, 75 Fed. Reg. 71,479 (Nov. 17, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A.     __Introduction.__

Petitioner/Counter-Respondent Waveland Capital Partners, LLC ("Waveland"), has filed a Petition ("Petition") in this Court to vacate a securities arbitration Award rendered jointly against Waveland and Counter-Respondent Melvin T. Day, II ("Day"), and in favor of Respondents/Counter-Petitioners Randall A. Tommerup, Individually and as Sole Member of R. Tommerup-Executive Park, LLC, and R. Tommerup-Arrowhead, LLC, and Helen E. Tommerup, Individually and as Sole Member of H. Tommerup-Executive Park, LLC, and H. Tommerup-Arrowhead, LLC (the "Tommerups").  A copy of the Award is attached as Exhibit "2."

In similar circumstances, after Judge Lovell confirmed a Montana securities arbitration award in favor or an investor, the Ninth Circuit affirmed and awarded attorneys' fees and doubled costs to the investor, because arbitration awards are subject to only narrow review.

> This appeal is a kind of man bites dog case in that a brokerage firm attacks an arbitration award. Having enthusiastically welcomed the enforcement of agreements to arbitrate, the securities industry might be expected not to encourage retrial of a case in a federal court. But when a broker loses an arbitration it is hard for the disappointed litigant to realize that the rules now permit only a restricted review of what arbitrators have decided. Deference to arbitrators is the rule.

Rostad and Rostad Corp. v. Investment Management & Research, Inc., 923 F.2d 694, 697 (9th Cir. 1991).

1

In this instance, prior to the arbitration, Waveland sought frivolously to enjoin the arbitration on the grounds that Waveland had not agreed to arbitrate, even though Waveland had signed a Submission Agreement expressly agreeing to arbitrate the Tommerups' claims.   Judge Molloy correctly denied Waveland's request for an injunction. "[T]he Arbitration Submission Agreement is an agreement to arbitrate the underlying dispute between the parties." Waveland Capital Partners, LLC v. Tommerup, 2012 WL 70572, at *2 (D. Mont. Jan. 6, 2012).   Judge Molloy found that Waveland's "statement that '[t]here is no arbitration agreement between Waveland and any of the Defendants' was, at least, misleading." Id. at *7 n.1.

Now, Waveland's Petition, ¶ 18, alleges that this Court should vacate the Award because the

> arbitrators exceeded their authority by determining that Waveland "failed to supervise Respondent Day and that the investments were unsuitable." Specifically, although the arbitrators were instructed as a matter of law that Section 20(a) of the Securities Exchange Act of 1934 maintained a 5-year statute of limitations without possibility of tolling and that FINRA rules did not create a private cause of action, the award was a manifest disregard of the federal and state law by finding otherwise.

Neither of these grounds–(1) statutes of limitation and (2) no private cause of action under the rules of the Financial Industry Regulatory Authority–is a valid basis to vacate the arbitration Award.   Accordingly, like Judge Lovell in Rostad, this Court

should confirm the Award. <u>See</u> 9 U.S.C. § 9 ("[A]ny party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected.").

**B.    Manifest Disregard of the Law is not a Valid Basis to Vacate an Arbitration Award.**

For the record, the Tommerups maintain that manifest disregard of the law is not a proper basis for vacating an arbitration award. <u>See</u> <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l</u>, 130 S. Ct. 1758, 1768 n.3 (2010) (leaving undecided whether the "manifest disregard" standard survived <u>Hall Street Assoc. v. Mattel, Inc.</u>, 552 U.S. 576, 585 (2008)); <u>Citigroup Global Mkts., Inc. v. Bacon</u>, 562 F.3d 349, 358 (5th Cir. 2009) (abandoning the "manifest disregard" standard in light of <u>Hall Street</u>).  The Tommerups recognize, however, that, in this Circuit, the "manifest disregard" standard has survived <u>Hall Street</u>, <u>Lagstein v. Certain Underwriters at Lloyd's, London</u>, 607 F.3d 634, 641 n.5 (9th Cir. 2010), and that this Court must follow the case law in this Circuit until this case law is changed or overruled.

**C.    Waveland has Not Established that the Arbitrators Manifestly Disregarded the Law Regarding the Statute of Repose for Federal Securities Law Claims.**

**1.    The "Manifest Disregard" Standard Requires Proof that the Arbitrators Correctly Stated the Applicable Law and Intentionally Disregarded it.**

3

Judicial review of an arbitration award is "'both limited and highly deferential.'" Poweragent Inc. v. Electronic Data Systems Corp., 358 F.3d 1187, 1193 (9th Cir. 2004) (citation omitted).  Although, in this Circuit, manifest disregard of the law is presently a valid basis to vacate an arbitration award, this ground for vacatur is narrowly construed and seldom applied to vacate an award.

> "'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." To vacate an arbitration award on this ground, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it."

Lagstein, 607 F.3d at 641 (citations omitted).

> [E]ven misstatements of the law followed by erroneous application of the law do not provide grounds upon which a reviewing court may vacate an arbitral award under the [Federal Arbitration Act ("FAA")]. Our precedent is quite clear that manifest disregard of the law for the purposes of the FAA occurs only where there is evidence that the Arbitrator knew the law but ignored it nonetheless. Here, perhaps the Arbitrator misunderstood the law and misapplied it, but we cannot conclude that the Arbitrator ignored the law.

Biller v. Toyota Motor Corp., 668 F.3d 655, 668 n.7 (9th Cir. 2012).

> "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award . . . ."
>
> Arbitrators are not required to set forth their reasoning supporting an award. An arbitrators' "award may be made without explanation of their reasons and without a complete record of their proceedings[.]" "If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." . . .

4

Furthermore, "manifest disregard . . . requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" "[T]o demonstrate manifest disregard, the moving party must show that the arbitrator 'underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same.'" "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it."

Bosack v. Soward, 586 F.3d 1096, 1104 (9th Cir. 2009) (citations omitted).

In addition, "to rise to the level of manifest disregard '[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.'" Collins v. D.R. Horton, Inc., 505 F.3d 874, 880 (9th Cir. 2007) (citation omitted). Waveland has not satisfied its heavy burden under these standards to establish that the arbitrators manifestly disregarded the law.

> **2.   Waveland has Not Established that the Arbitrators Correctly Stated the Five-Year Statute of Repose for Federal Securities Law Claims and Intentionally Ignored it.**

Here, for several reasons, Waveland has provided no evidence that the arbitrators understood and correctly stated well defined and clearly applicable law regarding statutes of limitation and then intentionally ignored that law. Waveland's arguments are founded on the one-sentence statement in the Award that Waveland "failed to supervise Respondent Day and that the investments were unsuitable." See

5

attached Exhibit 2, pg. 3. Waveland creatively extrapolates from this statement that the arbitrators must have disregarded the law because, according to Waveland, the statute of repose for a supervision claim is five years, and the Tommerups purchased the investments at issue in the arbitration more than five years before filing their arbitration claim. The statement in the Award that Waveland cites, however, does not mention statutes of repose, nor does any other part of the Award mention statutes of repose or statutes of limitation.  Waveland provides no evidence that the arbitrators understood and stated that the statute of repose was five years and then consciously ignored their knowledge of this time bar in rendering their Award. See Bosack, 586 F.3d at 1104 ("'[T]o demonstrate manifest disregard, the moving party must show that the arbitrator "underst[oo]d and correctly state[d] the law"' . . . 'and intentionally disregarded it.'" (citations omitted)).

### 3.   The Arbitrators Could have had Many Reasons for Their Award.

Waveland also has not established that the arbitrators' one-sentence statement regarding supervision and suitability was the only basis for their Award.   The arbitrators might have had other reasons for rendering their Award, in addition to their statement on supervision and suitability.   They might, for example, have concluded that Waveland, separately or through its broker Counter-Respondent Day,

violated the Montana Unfair Trade Practices and Consumer Protection Act, breached its common law fiduciary duty, broke contractual promises, or made misrepresentations and omissions which constituted common law fraud or negligent misrepresentations. These conclusions might have constituted separate and independent grounds for the Award. As reflected in the Tommerups' arbitration Statement of Claim–see attached Exhibit 3, pp. 41-64–the Tommerups made claims for violation of the Montana Unfair Trade Practices and Consumer Protection Act, breach of contract, fraud, breach of fiduciary duty, and negligent misrepresentation. Waveland has not established that the Award was not separately and independently based on these statutory and common law claims, which were not subject to the statute of repose for federal securities law claims.

### 4 The Finding of Negligent Supervision Could have Been a Common Law Finding not Subject to the Five-Year Statute of Repose.

Even assuming *arguendo* that the arbitrators' one-sentence statement regarding supervision and suitability was a complete explanation of their decision, Waveland assumes that the arbitrators' finding regarding supervision meant that they must have found a violation of the federal or state securities laws. The arbitrators, however, could have found that their finding of failure to supervise supported a common law claim for negligent supervision under Utah or Montana law. In this regard, Waveland

7

is making an argument substantially similar to an argument that the Ninth Circuit rejected in Rostad. The Ninth Circuit found that the brokerage firm in Rostad had incorrectly claimed "that all common law fraud counts become statutory claims when attached to claims brought under the Montana Securities Act." 923 F.2d at 697.

As reflected in the Tommerups' Statement of Claim, ¶¶ 2, 10, see attached Exhibit 3, Counter-Respondent Day, the broker, worked from Utah and sold the investments at issue to the Tommerups in Montana. Both Utah and Montana recognize claims for negligent supervision. Hannon v. Avis Rent A Car System, Inc., 107 F. Supp. 2d 1256, 1263 (D. Mont. 2000) (Montana); David P. Coldesina, D.D.S. v. Estate of Simper 407 F.3d 1126, 1137 (10th Cir. 2005) (Utah).[1] Accordingly, the arbitrators could have found that Waveland was liable for common law negligent supervision under Montana or Utah law. The federal statute of repose for securities law claims would not have applied to this finding of liability.

---

[1] See also Johnson-Bowles Co. v. Division of Sec. of Dep't of Commerce, 829 P.2d 101, 110-111 (Utah App. 1992) ("It is clear that Utah may apply its securities laws to operations that are conducted within this state, even if those laws affect, or are aimed at non-residents. . . . '[A] state is damaged if its citizens are permitted to engage in fraudulent practices even though those injured are outside its borders.'" (citation omitted)).

**5.     Waveland has not Established that All of the Tommerups' Statutory and Common Law Claims were Time-Barred.**

Waveland also cannot establish that all of the Tommerups' common law claims and all of their statutory claims were time-barred.  As reflected in the Tommerups' distribution summary submitted to the arbitrators, <u>see</u> attached Exhibit 4, the Tommerups' distributions from the investments at issue did not stop until September 2008, and they filed their arbitration claim two years and one month later on October 13, 2010. <u>See</u> attached Exhibit 3, p. 64.  The Tommerups had no reason to sue anybody until, at the earliest, their distributions stopped.

Utah law provides that actions may be brought "within four years . . . after . . . *the last payment is received* . . . upon a contract, obligation, or liability not founded upon an instrument in writing."  Utah Code Ann. § 78B-2-307(1) (emphasis added). The Tommerups' claims were clearly timely under this statute.  More generally, the arbitrators could conclude that statutes of limitation did not accrue under either Montana or Utah law until, at the earliest, the distributions stopped and actual damages occurred.

> The accrual rule is based on the rationale that "it is inherently illogical and unfair to require a plaintiff to file an action prior to the accrual of the cause of action because if a plaintiff filed suit when no actual damages had been sustained, the suit would properly be dismissed." Further, actual damages, not the mere threat of future damages, are

9

required to begin the running of the statute of limitations under the accrual rule.

Ehrman v. Kaufman, Vidal, Hileman & Ramlow, PC, 358 Mont. 519, 525, 246 P.3d

1048, 1052-53 (2010) (citation omitted).

> Until a plaintiff suffers actual harm or damages, the limitations period will not accrue.

> Applying these principles to the instant case, we find that defendants failed to prove that Ms. Seale suffered a legally cognizable injury when she discovered that the cancer had spread to her lymph nodes. The only evidence that defendants produced regarding the harmful consequence of the cancer's spread was that it increased the risk that the cancer would recur. They failed to argue or produce evidence that in 1988, Ms. Seale could complain of any actual present damages. Although we agree that the cancer's spread resulted in a dramatic decrease in Ms. Seale's chance of survival, we conclude that without proof of actual damages, an alleged claim for enhanced risk is not adequate to sustain a cause of action for negligence. . . .

> . . . .

> Our holding that damages in the form of an enhanced risk only are not sufficient to start the running of the statute of limitations not only comports with generally accepted principles of tort law, but also minimizes the filing of speculative suits, thus saving judicial time and resources.

Seale v. Gowans, 923 P.2d 1361, 1364-65 (Utah 1996) (citations omitted).

Moreover, on October 15, 2008, the Tommerups were assured that all debt payments on all properties were paid, and no properties were in default. They were told to wait for a conference call regarding their October distributions. See attached

Exhibit 5. Under Montana law, limitations periods are tolled when facts are concealed

or self-concealing.

> [W]hen the facts constituting the claim are by their nature concealed or
> self-concealing, the period of limitations does not commence "until the
> facts constituting the claim have been discovered or, in the exercise of
> due diligence, should have been discovered by the injured party. . . ."
> Section 27-1-102(3), MCA. The District Court concluded and the parties
> do not dispute that lung disease is, by its nature, self-concealing. Thus,
> the issue is whether Chriske filed her complaint more than three years
> after she discovered or, in the exercise of due diligence, should have
> discovered that her smoking caused her "various tobacco-related
> diseases."

Chriske v. State ex rel. Dept. of Corrections and Institutions, 357 Mont. 28, 31-32,

235 P.3d 588, 590 (2010).

The arbitrators could likewise have concluded that Waveland and Day had a

duty to disclose and that the failure to disclose relevant facts constituted fraudulent

concealment which tolled the statutes of limitation.

> Although we have not yet ruled upon this issue, other courts have held
> that "mere failure to reveal information can be fraudulent concealment
> by a person, such as a fiduciary, who has a duty to disclose." Geo.
> Knight & Co. v. Watson Wyatt & Co. (1st Cir. 1999), 170 F.3d 210, 215
> (citation omitted). Thus, "if a trust or confidential relationship exists
> between the parties, which imposes a duty to disclose, mere silence, by
> the one under that duty constitutes fraudulent concealment and thus tolls
> the applicable statute of limitations." Greene v. Morgan, Theeler,
> Cogley & Petersen (S.D. 1998), 575 N.W.2d 457, 462 (citation omitted).

11

<u>Stanley L. and Carolyn M. Watkins Trust v. Lacosta</u>  321 Mont. 432, 444, 92 P.3d

620, 629-30 (2004)

> So we conclude that here there was a suppression of the truth, which the party with superior knowledge had a duty to disclose, which amounted to fraud.

> > "One of the fundamental tenets of the Anglo-American law of fraud is that fraud may be committed by the suppression of the truth . . . as well as the suggestion of falsehood . . . ."

> > "Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party, whether the duty arises from a relation of trust, from confidence, *inequality of condition and knowledge, or other* attendant circumstances . . . ." [Emphasis added by court.]

> > "The principle is basic in the law of fraud as it relates to nondisclosure that a charge of fraud is maintainable where a party who knows material facts is under a duty, under the circumstances, to speak and disclose his information, but remains silent . . . ."

> > "Knowledge that the other party to a contemplated transaction is acting under a mistaken belief as to certain facts is a factor in determining that a duty of disclosure is owing. There is much authority to the effect that if one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expediency of the bargain."

12

Elder v. Clawson, 14 Utah 2d 379, 382-84, 384 P.2d 802, 804-05 (1963) (footnotes omitted). "A fiduciary's breach of the '"duty to speak the truth"' is sufficient to establish fraudulent concealment" for purposes of tolling the statutes of limitation. Charlesworth v. Reyns, 113 P.3d 1031, 1037 (Utah App. 2005).

Accordingly, for these reasons, the arbitrators could reasonably have concluded that limitations periods were tolled at least until October 15, 2008, less than two years before the filing of the Statement of Claim dated October 13, 2010, when the Tommerups were assured that all debt payments on all properties were paid, and no properties were in default. See attached Exhibit 5. All of the Tommerups' common law and statutory fraud claims were subject to a limitations period of at least two years under Montana and Utah law, including eight years under Montana law for breach of written contract, § 27-2-202(1), MCA; six years under Utah law for breach of written contract, Utah Code Ann. § 78B-2-309(2); five years for breach of oral contract under Montana law, § 27-2-202, MCA; four years for breach of oral contract, negligence, and breach of fiduciary duty claims under Utah law, Utah Code Ann. § 78B-2-307; three years for negligence and breach of fiduciary duty claims under Montana law, § 27-2-204, MCA; three years for fraud claims under Utah law, Utah Code Ann. § 78B-2-305(2);  and two years for federal securities fraud, 28 U.S.C. § 1658(b), Montana securities fraud, fraud, and Unfair Trade Practices and Consumer

13

Protection Act, §§ 27-2-203, 27-2-211, 30-10-307(5), MCA, and Utah securities fraud, Utah Code Ann. § 61-1-22(7).

Because the arbitrators could reasonably have concluded that the limitations periods did not begin until, at the earliest, October 15, 2008, they could likewise reasonably have concluded that at least one of the Tommerups' common law and statutory fraud claims was timely within the limitations periods. Moreover, because the investments at issue were made less than six years before the filing of the Statement of Claim, the arbitrators certainly could reasonably have concluded that the Tommerups' claims for breach of written contract were timely, because the limitations periods for these claims were six years or more under both Montana and Utah law. Only one timely claim was needed to support a finding of liability.

> **6.    The Arbitrators Could have Concluded that the Purchase of the DBSI Arrowhead Investment Occurred in February 2006, when the Investment Closed and that the Tommerups' Claims for Overconcentration were Complete at that Time, Less than Five Years before the Filing of the Arbitration Claim.**

The Tommerups made two DBSI investments, one in DBSI Executive Park and one in DBSI Arrowhead. See attached Exhibit 3, ¶ 23. The DBSI Arrowhead investment closed in February 2006, less than five years before the filing of the Tommerups' Statement of Claim. See attached Exhibit 6. The arbitrators could have

concluded that the statute of repose did not start until that time at the earliest. "[T]he relevant inquiry was which of the Defendants' activities–offer, sale, or delivery–occurred last." Doran v. Petroleum Management Corp., 576 F.2d 91, 93 (5th Cir. 1978). McLernon v. Source Int'l, Inc., 701 F. Supp. 1422, 1427 (E.D. Wis. 1988) ("[A]n unregistered security is 'sold' for purposes of § 12(1) liability when the last integral active sale is completed, including . . . delivery of the securities."); Thiele v. Davidson, 440 F. Supp. 585, 590 (M.D. Fla. 1977) ("Logic dictates the conclusion that a security is not sold until it is delivered . . . .").

In addition, the arbitrators could reasonably have concluded that the Tommerups' claim for overconcentration for both DBSI Executive Park and DBSI Arrowhead became complete at the earliest when the second DBSI investment closed in February 2006, less than five years before the filing of their Statement of Claim. A fundamental duty of any stockbroker and the broker's firm is to avoid over-concentration of customers' portfolios in a single security or a single group of securities. Courts and the Securities and Exchange Commission routinely impose liability when brokers or investment managers fail adequately to diversify their customers' portfolios. See GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc., 895 F.2d 729, 733 (11th Cir. 1990) ("The district court thus correctly concluded that appellant failed to diversify, as was required of a prudent investment manager.")

15

Stephen T. Rangen, Exchange Act Release No. 38,486, 64 S.E.C. Docket 628, 1997

WL 163991, at *3 (April 8, 1997) ("[B]y concentrating so much of their equity in

particular securities, [the broker] increased the risk of loss for these individuals

beyond what is consistent with the objective of safe, non-speculative investing.").

An arbitration panel found that an arbitration claim was timely because

continued solicitations of the same investment caused an over-concentration and

constituted continued misrepresentations that the initial investment was appropriate.

> The first of his two acquisitions of SLLC cumulative convertible
> preferred stock was made by Mr. Bossert in 1992 when he invested
> $30,000 in that security. Respondents claim that this purchase was made
> on February 24, 1992, more than six years prior to filing of the
> Statement of Claim on May 13, 1998. The panel finds, however, that the
> solicitation of Mr. Bossert to purchase, and the sale to him of three other
> SLLC private placement offerings; the convertible subordinated
> debenture, an Arch Fund investment and the collateral trust bond, all
> subsequent to May 13, 1992 (the Rule 10304 cut-off date as to all
> claimants except Michael Palmisano) constituted representations by
> respondents that the resulting concentration of Mr. Bossert's portfolio
> in the high-risk, illiquid private securities of SLLC was suitable and
> appropriate and these representations as to concentration necessarily
> included the preferred stock acquired before the cut-off date.
> Accordingly the subsequent solicitations and sales constituted events
> which give rise to Mr. Bossert's claim with respect to his SLLC
> preferred.

John F. Baumer vs. J.E. Liss & Co, 2001 WL 1395789, at *6 (NASD Reg. Arb. Oct.

4, 2001).

The arbitrators could have adopted the same principle.  They could have found that Waveland's and Day's continued recommendation of speculative DBSI real estate investments constituted reaffirmations of the validity of the earlier recommendation and resulted in an over-concentration which became complete at the time the last investment closed in February 2006, within the five-year statute of repose for federal securities law claims.  Accordingly, even assuming *arguendo* that the Award was based solely on securities law violations and that a five-year repose period applied, the arbitrators could still reasonably have concluded that the Tommerups' claims for securities fraud were timely within the repose period.

> ### 7.   The Arbitrators Could Reasonably have Concluded that Statutes of Limitation Apply only in Court, not in Arbitration.

Finally in this connection, the arbitrators could reasonably have concluded that statutes of limitation do not apply in arbitration, as two state courts have recently found.

> Although arbitrators are empowered to interpret the NASD Code, their interpretations may not violate state law. And though arbitrators have the discretion to interpret section 10304 as they see fit, that discretion is bounded by Washington's case law and statutes. Because, under our cases, state statutes of limitations may not apply to arbitrations absent the parties' agreement, the arbitrators were not authorized to apply those limits to the Brooms' claims.

17

Broom v. Morgan Stanley DW Inc., 169 Wash. 2d 231, 244, 236 P.3d 182, 188 (2010). In Broom, the court vacated an arbitration award that relied on statutes of limitation.

A Florida court reached the same conclusion. "[W]e hold that Florida's statutes of limitations do not apply to arbitrations." Raymond James Financial Services, Inc. v. Phillips, 2011 WL 5555691, at *6 (Fla. Dist. Ct. App. Nov. 16, 2011). "We are in agreement with the opinion recently expressed by the Washington Supreme Court in Broom." Id.

Under Montana law, the limitations periods in §§ 27-2-203, 27-2-204, 27-2-211, and 30-10-307, MCA, all apply only to "actions." Under Montana law, "[a]n action is an ordinary proceeding in a court of justice . . . . § 27-1-102(2), MCA. An arbitration is not a proceeding in a "court of justice." Accordingly, the arbitrators could determine that the limitations periods in §§ 27-2-203, 27-2-204, 27-2-211, and 30-10-307, MCA, did not apply to arbitrations.

The limitations periods in Utah Code Ann. §§ 61-1-22(7)(a)(ii), 78B-2-305, 78B-2-307, 78B-2-309, likewise all apply only to "actions." Under Utah law, "Rule 3 of the Utah Rules of Civil Procedure clarifies the meaning of the word 'action' when it states that '[a] civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons together with a copy of the complaint [.]'" Dahl

v. Harrison, 265 P.3d 139, 150 (Utah App. 2011).  Under Utah law, the term "action

. . . is defined in Utah Rule of Civil Procedure 3."  Rimensburger v. Rimensburger,

841 P.2d 709, 711 (Utah App. 1992). For "purposes of the statute of limitations," a

"civil action is commenced either by the filing of a complaint with the clerk of court

or by the service of a summons."  Fields v. Mountain States Tel. & Tel. Co., 754 P.2d

677, 678, 679 (Utah App. 1988).  Accordingly, the arbitrators could have concluded

that statutes of limitation in Utah apply only to "actions" in court, not arbitrations.

Federal courts have likewise not applied statutes of limitation to arbitrations

and similar proceedings. In TLI, Inc. v. United States, 100 F.3d 424, 426, 427 (5th

Cir. 1996) (citation omitted), the Court held that a statutory limitations provision did

not apply to an administrative proceeding, because the statute by its terms applied

only to "commenc[ing] an action," and "'action' in its 'usual legal sense means a

lawsuit brought in a court; a formal complaint brought within the jurisdiction of a

court of law.'"  TLI quoted Federal Rule of Civil Procedure 3, which defines the

"[c]ommencement of [a]ction" to mean the "filing a complaint with the court."  100

F.3d at 427.

The Second Circuit applied this principle to allegations in arbitration that a

federal statute was violated.

19

> [Although] the demand for arbitration . . . was not made within the one year limitation upon suits, contained in [the pertinent federal statute], . . . there is, nevertheless, no time bar because arbitration is not within the term "suit" as used in that statute.  Instead, it is the performance of a contract providing for the resolution of controversy without suit.

Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687, 689 (2d Cir. 1952).

The federal court in NCR Corp. v. CBS Liquor Control, 874 F. Supp. 168, 172 (S.D. Ohio 1993), aff'd 43 F.3d 1076 (6th Cir. 1995), also found that statutes of limitation do not apply in arbitrations.

> [T]he effect of a statute of limitations is to bar an action at law, not arbitration.  See Annotation, Statute of Limitations as Bar to Arbitration under Agreement, 94 ALR 3d 533, § 2 (1979). . . .  [T]he statutes of limitations on which NCR relies . . . limit actions in court . . . .  [O]n their face they limit the bringing of actions.
>
> . . . .
>
> [T]he Court concludes that the Arbitrator was correct in holding that the statute of limitations is not directly applicable in arbitration and in not applying a statute here . . . .

Many state courts have agreed with this conclusion. Dayco Corp. v. Fred T. Roberts and Co., 192 Conn. 497, 503, 472 A.2d 780, 784 (1984); Har-Mar, Inc. v. Thorsen & Thorshov, Inc., 300 Minn. 149, 152-54, 218 N.W.2d 751, 754-55 (1974); Shafnacker v. Raymond James & Assoc., 425 Mass. 724, 729-30, 683 N.E.2d 662, 667 (1997); Cameron v. Griffith, 370 S.E.2d 704, 705 (N.C. Ct. App. 1988); Lewiston Firefighters Assoc., Local 785 v. City of Lewiston, 354 A.2d 154, 167 (Me. 1976).

As previously stated, "to rise to the level of manifest disregard '[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.'" Collins v. D.R. Horton, Inc., 505 F.3d 874, 880 (9th Cir. 2007) (citation omitted). To Respondents' knowledge, no federal, Utah, or Montana court has unambiguously held that statutes of limitation must be applied in arbitration and that arbitration awards will be vacated if they do not apply statutes of limitation. Absent "well defined, explicit, and clearly applicable" pronouncements on this issue from the federal courts and the Utah and Montana Supreme Courts, the arbitrators could reasonably have concluded that they were not required to apply statutes of limitation and, indeed, as in Broom, that their Award would be vacated if they did apply statutes of limitation.   Waveland therefore has not established that the arbitrators manifestly disregarded the law on this point.

### D.   Waveland has not Established that the Arbitrators Manifestly Disregarded the Law on Private Rights of Action for Violations of Self-Regulatory Organization Rules.

Waveland argues that, because the arbitrators said in the Award that the investments at issue were unsuitable, the arbitrators must have applied a private right of action for violation of self-regulatory organization rules.  Waveland cites Jablon v. Dean Witter & Co., 614 F.2d 677, 678 (9th Cir. 1980), which affirmed a district court decision that "there is no implied private cause of action under . . . the NASD

21

suitability rule."  The suitability rule at the time of <u>Jablon</u> was section 2 of the Rules of Fair Practice of the National Association of Securities Dealers, Inc., is presently Rule 2310 of the National Association of Securities Dealers, Inc., and will soon (effective July 9, 2012) be Rule 2111 of the Financial Industry Regulatory Authority. <u>See</u> Order Granting Approval of a Proposed Rule Change to Adopt FINRA Rules 2090 (Know Your Customer) and 2111 (Suitability), Exchange Act Release No. 63,325, 75 Fed. Reg. 71,479 (Nov. 17, 2010).

Waveland's argument on this point is incorrect for several reasons. First, the arbitrators never mentioned Rule 2310, never said they were finding a violation of Rule 2310, never said they were finding a private of action for a violation of Rule 2310, and never said they knew they could not find a private right of action for violations of Rule 2310.  Waveland therefore cannot establish that the arbitrators knew the law on private rights of action for violations of self-regulatory organization rules and consciously ignored it, as required for a finding of manifest disregard of the law.

Second, as previously stated, Waveland has not established that the arbitrators' one-sentence statement regarding supervision and suitability was the only basis for their Award.  The arbitrators might have had other reasons for rendering their Award, in addition to their statement on supervision and suitability.  They might, for example,

have concluded that Waveland, separately or through its broker Counter-Respondent Day, violated the Montana Unfair Trade Practices and Consumer Protection Act, breached its common law fiduciary duty, broke contractual promises, or made misrepresentations and omissions which constituted common law fraud or negligent misrepresentations. These conclusions might have constituted separate and independent grounds for the Award. Waveland has not established that the Award was based solely on the arbitrators' supervision and suitability findings.

Third, even assuming *arguendo* that supervision and suitability were the sole bases for the Award, Waveland has not established that the suitability finding was based on a private right of action for violations of self-regulatory organization rules. The Tommerups' arbitration Statement of Claim does not contain any separate private cause of action for violation of the suitability rule of the National Association of Securities Dealers, Inc.  Instead, the Statement of Claim contains only well-established statutory and common law causes of action.

Furthermore, unsuitable recommendations directly violate both the securities laws and the common law.

> [S]uitability claims are often brought "as a distinct subset" of section 10(b) claims under the Securities Exchange Act of 1934. . . . However, for the purposes of this appeal we consider "suitability" to serve more as a general description of the character of potential common-law claims (such as breach of fiduciary duty, breach of contract, fraud, and

23

negligent misrepresentation—all of which the Belands did allege in the FINRA proceedings), rather than a technical term denoting a specific type of section 10(b) claim.

In re American Exp. Financial Advisors Securities Litigation, 672 F.3d 113, 136-37 (2d Cir. 2011). Accordingly, the arbitrators could reasonably have concluded that Waveland's actions, through its broker Day, directly violated federal and state statutory and common law regarding a broker's duty to recommend suitable investments, without reference to a private right of action under Rule 2310.

Fourth, although the arbitrators did not cite Rule 2310, they could in any case reasonably have cited it as evidence for their finding of liability.

> True, courts have held that there is not a separate right of action for violation of rules like NYSE Rule 405. But Courts have also stated that rules like NYSE Rule 405 are "part of the negligence concept of common law." The Court agrees that "Rule 405 of the NYSE [and certain other rules] are appropriate indicia of the standard of conduct required of a stock broker in the practice of his profession." "[W]hile a violation of the NASD suitability rule was not itself actionable, it could be used as evidence of negligence."

Sollberger v. Wachovia Securities, LLC, 2010 WL 2674456, at *11 (C.D. Cal. June 30, 2010).

Courts have determined that securities industry standards are relevant and admissible to determine a brokerage firm's liability. See Mihara v. Dean Witter & Co., Inc., 619 F.2d 814, 821-22, 824 (9th Cir. 1980) ("The admission of testimony

relating to [NYSE and NASD] rules was proper precisely because the rules reflect the standards to which all brokers are held."); <u>Miley v. Oppenheimer & Co.</u>, 637 F.2d 319, 333 (5th Cir. 1981) ("NYSE and NASD rules are excellent tools against which to assess *in part* the reasonableness or excessiveness of a broker's handling of an investor's account.").

Utah and Montana courts have likewise relied on industry standards to support a finding of liability.

> We . . . hold that . . . expert testimony on the custom of the architectural profession constituted rebuttable proof aimed at assisting the trier of fact to determine whether the Architect negligently performed the contract. The testimony aided the jury in establishing whether the Architect fulfilled the contract with care, skill, reasonable expediency, and faithfulness according to the standards of his profession.

> The Architect was obligated under the contract to supervise construction of the building, utilizing the ordinary care exercised by members of his profession. . . . The trial court did not err in allowing the Hospital's expert to testify on the standard of the industry.

<u>Northern Montana Hosp. v. Knight</u>, 248 Mont. 310, 319, 811 P.2d 1276, 1281 (1991). The "rule in negligence cases shall continue to be that evidence of industry custom and practice is generally admissible as evidence relevant to whether defendant's conduct was reasonable under the circumstances." <u>Tallman v. City of Hurricane</u>, 985 P.2d 892, 897 (Utah 1999) (<u>quoting</u> <u>Rossell v. Volkswagen of Am.</u>, 147 Ariz. 160,

709 P.2d 517, 523 (1985)).  Accordingly, although the arbitrators did not cite Rule 2310, they could reasonably have done so to support their findings of liability, without running afoul of the principle that private causes of action are not permitted for violations of the Rule.

For all of these reasons, the arbitrators did not manifestly disregard the law by finding that the investments at issue were unsuitable for the Tommerups.  The arbitrators also did not manifestly disregard the law regarding the statute of repose.  Accordingly, this Court should reject Waveland's effort to vacate the Award and should instead confirm it.

DATED this 7th day of May, 2012.

By     /s/ Kalju Nekvasil
       Kalju Nekvasil
       Goodman & Nekvasil, P.A.

       /s/ Linda M. Deola
       Linda M. Deola
       Morrison, Motl & Sherwood, P.L.L.P.

       *Attorneys for Respondents/Counter-Petitioners*

26

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)(E)</u>

Counsel hereby certifies that, as determined by a word processing program in compliance with Local Rule 7.1(d)(2)(E), the foregoing document contains 6,210 words.

DATED this 7th day of May, 2012.

By <u>/s/ Linda M. Deola</u>
Linda M. Deola
Morrison, Motl & Sherwood, P.L.L.P.

Kalju Nekvasil
Goodman & Nekvasil, P.A.

*Attorneys for Respondents/Counter-Petitioners*

27

## <u>TABLE OF EXHIBITS</u>

Declaration of Kalju Nekvasil . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Award dated February 7, 2012, in <u>Tommerup v. Waveland Capital Partners, LLC</u>, FINRA Case No. 10-04616. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Claim dated October 13, 2010, in <u>Tommerup v. Waveland Capital Partners, LLC</u>, FINRA Case No. 10-04616. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Distribution Summary Submitted to the arbitrators in <u>Tommerup v. Waveland Capital Partners, LLC</u>, FINRA Case No. 10-04616. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

DBSI e-mail to Randall Tommerup dated October 15, 2008. . . . . . . . . . . . . . . . . 5

Closing correspondence to Randall and Helen Tommerup dated February 10, 2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6