UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

\*\*\*\*\*\*\*

WAVELAND CAPITAL PARTNERS, LLC,

     Petitioner/Counter-Respondent,

and MELVIN T. DAY, II,

     Counter-Respondent,

-v-

RANDALL A. TOMMERUP, Individually and as Sole Member of R. TOMMERUP-EXECUTIVE PARK, LLC, and R. TOMMERUP-ARROWHEAD, LLC, and HELEN E. TOMMERUP, Individually and as Sole Member of H. TOMMERUP-EXECUTIVE PARK, LLC, and H. TOMMERUP-ARROWHEAD, LLC,

     Respondents/Counter-Petitioners.

CV 12-26-H-CCL

ORDER
CONFIRMING
ARBITRATION
AWARD

\*\*\*\*\*\*\*

Before the Court is a Petition to Vacate Arbitration Award (ECF No. 1) filed by Petitioner Waveland Capital Partners, LLC ("Waveland"), and a Motion to Confirm Arbitration Award (ECF No. 11) filed by Randall A. and Helen E. Tommerup ("Tommerup").  Having reviewed the briefs and affidavits of the parties, and all the record in this case, the Court is prepared to rule.  The sole issue raised by the Petition to Vacate the Arbitration Award is whether the arbitration panel manifestly disregarded the law applicable to the arbitration.

Background

Randall and Helena Tommerup live in Dillon, Montana, and have been married forty-one years.  Randall Tommerup makes and sells fence posts and rails. Helen Tommerup is a bank teller.  (ECF No. 12-3, ¶ 2, Claimants' Statement of Claim.)  The Tommerups discussed investing "a significant portion" of their life savings with Melvin T. Day, II ("Day").  Tommerups claim that they wanted "conservative, low risk investments that provided dependable income."  (ECF 12-3, ¶ 3.)  Tommerups began discussing 1031 exchanges with Day.  Day is both an

2

independent contractor[1] and a registered representative of securities broker/dealer Waveland Capital Partners, LLC ("Waveland").  Waveland is a securities broker/dealer in Montana, Utah, the Securities and Exchange Commission ("SEC"), and a member of the Financial Industry Regulatory Authority ("FINRA").  As a licensed member of FINRA, Waveland has agreed to submit all disputes arising out of or in connection with its business to arbitration conducted according to the FINRA *Code of Arbitration Procedure*.

Prior to Day's relationship with Waveland, Day had a significant negative history in the investment field: he was fired by Dain Bosworth in 1983 for various violations, the State of Utah issued a cease and desist order against him in 1999 and caused him to suffer a brief suspension, and he was sued by an investor in 2000 resulting in a Ch. 7 bankruptcy filing by his business.  During the time period at issue here, Day was located in Lehi, Utah, working in a Waveland office. (ECF No. 12-3, ¶ 10.)  Day was one of many ("dozens or hundreds") Waveland

---

[1]  FINRA Notice 86-65 states that the fact of independent contractor relationship "does not alter the obligations of the individual and the firm to comply fully with all applicable regulatory requirements."

representatives.  (*Id.*)  Day was supervised by the Waveland office in Irvine,

California.  (*Id.*)  Waveland relied upon Day to report truthfully his activities and

compliance with Waveland's rules, FINRA's rules, and state and federal laws.

(ECF No. 12-3, ¶ 16.)  Day was not licensed in Montana.  (ECF No. 12-3, ¶ 18.)

Day recommended that the Tommerups invest in two long-term real estate

investments totaling $410,000.00:  (1) a January 28, 2005 investment in DBSI-

Executive Park LLC, Tenant in Common, in the amount of $150,000, and (2) a

September 8, 2005, investment in DBSI Arrowhead, LLC 1695, 1705 & 1715

Indian Woods Circle, Tenants in Common, in the amount of $260,000.[2]  (ECF No.

12-3, ¶ 23.)  In addition, the Tommerups assumed mortgage debt on the two

---

[2]  DBSI is an Idaho company owned by Douglas L. Swenson.  (ECF No. 12-3 at 112.)  After briefing was concluded on the Petition to Vacate Arbitration Award and Counterclaim to Confirm Arbitration Award, the Montana Supreme Court ruled in *Redding v. Montana First Judicial District Court*, 281 P.3d 189 (Mont. 2012), that tenants-in-common investments in properties owned by DBSI (or one of its affiliates, such as FOR 1031) were securities under the Securities Act of Montana, § 30-10-101, MCA, et seq.  Notably, a bankruptcy examiner investigated DBSI and affiliates and found that DBSI was a Ponzi scheme.  *Id.* at 320.  DBSI collapsed in 2008.

properties totaling $425,388.77.  (*Id.*)  Tommerups claim that they would not have invested their life savings in these investments had they known that these were "high-risk, high-commission, illiquid investments. . . ."  (ECF No. 12-3, ¶ 24.) The Tommerups claim they planned to use the investment income to pay their living expenses.  (ECF No. 12-3, ¶ 26.)  Day allegedly offered them no alternative investments.  (ECF No. 12-3, ¶ 25.)  The investment apparently collapsed in September, 2008, when the promised monthly payments to the Tommerups stopped.

In Count I of their Statement of Claim, the Tommerups allege violation of federal securities laws by claiming that Waveland and Day violated section 2(1) of the Securities Act, 15 U.S.C. § 771b(1), and section 3(a)(10) of the Securities Exchange Act, 15 U.S.C. § 78c(a)(10).  Tommerups assert that Waveland was a controlling person within the meaning of section 20 of the Securities Exchange Act, 15 U.S.C. §78t.  Tommerups claims that Waveland and Day offered and sold unregistered securities, engaged in fraud in the offer or sale of securities, and engaged in fraud in connection with the purchase or sale of securities.

In Count II of their Statement of Claim, the Tommerups allege violations of the Securities Act of Montana, charging both a failure to register DBSI in Montana (M.C.A. § 30-10-2020, and also making unsuitable recommendations, misrepresentations and omissions of material fact (M.C.A. §§ 30-10-301, -307).

In Count III of their Statement of Claim, the Tommerups allege violations of the Montana Unfair Trade Practices and Consumer Protection Act.  Tommerups allege that Waveland, acting through Day, violated Mont. Code Ann. § 30-14-103 by engaging in unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce.

In Count IV of their Statement of Claim, the Tommerups allege violation of the Utah Securities Act.  Tommerups allege failure to register DBSI in Utah (Utah Securities Act 61-1-7), and making unsuitable recommendations, misrepresentations, and omission of material fact (Utah Securities Act 61-1-1(2). Under the Utah Securities Act, Section 61-1-22(4), a broker/dealer who directly or indirectly controls a person whose activities constitute violations of the Act can be held liable under the doctrine of *respondeat superior*.

In Count V of their Statement of Claim, the Tommerups allege breach of contract.  Tommerups allege that Waveland and Day broke laws, rules, and regulations relating to the transaction and fraudulently induced them to enter into the contractual relationship by false representations and non-disclosure of material facts.  The breach of FINRA Rules 2110, 2310, 2120, 2330, and 3010 allegedly constitute a breach of the contractual relationship between the Tommerups and Waveland and Day.  Further, violations of the rules of the Utah Securities Commission and the Montana Rules of the Securities Department constitute further breach of the contract.

In Count VI of their Statement of Claim, the Tommerups allege Common Law Fraud.  In Count VII, the Tommerups alleged Breach of Fiduciary Duty.  In Count VIII, the Tommerups allege Negligence and Gross Negligence.

Legal Standard

Judicial review of arbitration awards is highly deferential.  *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 414 (9th Cir. 2011).  A party moving to vacate an arbitration award has the burden of proof, and the showing required to

7

avoid confirmation of the award is very high.  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2nd Cir. 2006) (quotation omitted).  "Even where explanation for an award is deficient or *non-existent*, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case." *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 93 (2d Cir. 2008), *rev'd on other grounds*, 130 S.Ct. 1758 (2010) (emphasis added).  Only a "barely colorable justification" for the outcome reached by the arbitrators is necessary to confirm the award.  *D.H. Blair & Co., Inc.*, 462 F.3d at 110.

Vacatur of arbitration awards is permitted under limited circumstances by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.[3]  One statutory ground allowing vacatur is "where the arbitrators exceeded their powers. . . ."  9 U.S.C. § 10(a)(4).  When an arbitrator has "demonstrated a manifest disregard for law[,]" a court may find sufficient ground to vacate an arbitration award.  *Johnson*, 635

---

[3]  The Federal Arbitration Act permits vacation only if (1) corruption or fraud was involved, (2) the arbitrators were evidentially partial or corrupt, (3) the arbitrators were guilty of misbehavior, or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10.

F.3d at 414 (citation omitted).[4]  However, an erroneous interpretation of the law will not suffice.  The party attempting to vacate the arbitration award must show that the arbitrator *understood* and *correctly stated* the law but then ignored it. *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (quoting *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007)).  Obviously, the law allegedly ignored by the arbitrator must be "well-defined, explicit, and clearly applicable." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007).   Even a gross error of law "no matter how obvious or outrageous" will not support vacating an award unless there is evidence "reliably demonstrating" that the arbitrator's error was accompanied by "knowledge of the error of that action and/or the intention to nullify the law or an awareness that [the arbitrator] was doing so." *Collins v. D.R.*

---

[4]  The parties disagree whether the manifest disregard standard is still a valid reason for vacating an arbitration award, after *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (holding the FAA sets forth exclusive grounds for judicial review of arbitration awards).  The Ninth Circuit, however, has held that the manifest disregard standard survived *Hall Street*.  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009).

*Horton, Inc.*, 361 F.Supp.2d 1085, 1100 (D. Ariz. 2005).   The "risk that arbitrators may construe the governing law imperfectly . . . or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes."  *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 1003 (9th Cir. 2003).

Analysis

None of the requirements for justifying a vacatur can be met in this case. Petitioner Waveland has failed to provide evidence that the arbitrators understood and correctly stated the law as regards Petitioner's five-year statute of repose defense to the Securities Exchange Act claim.  Waveland merely shows that *Waveland* presented oral and written argument on the statute of repose to the arbitrators.  Even less supportable is Waveland's claim that the arbitrators improperly founded liability on a private right of action for violations of self-regulatory organization rules.  The arbitrators' decision simply does not address the defenses presented by Waveland, so it cannot be said that the panel correctly

stated that law and proceeded to disregard it.  The most that could be said is that the arbitration panel disregarded Waveland's argument, but not the law itself.

In addition, there could be numerous reasons why the panel did not decide the case in the manner requested by Waveland.  Perhaps the arbitrators decided that statute of repose and limitations defenses are not valid defenses in arbitration, and, indeed, Waveland cites no case that holds that arbitration proceedings are actions within the meaning of that term in the pertinent state and federal statutes of limitations and repose.  Thus, certainty is lacking because this statute of limitations defense is not well-defined, explicit, and clearly applicable.

Waveland vigorously argues that the federal statutory claims are outside the statute of repose of five years because the two investments made by the Tommerups were dated January 28, 2005, and September 8, 2005.  Relying on these dates, Waveland argues that the Tommerups' arbitration claim made on October 13, 2010, was outside the five-year statute of repose.  However, it appears that the actual closing on the second investment property did not occur until February, 2006 (ECF No. 12-6), and therefore the arbitration panel could have

11

used February, 2006, as the start date for its calculation of the five-year statute of repose as to that particular $260,000 investment.  Under this finding and conclusion, an October 13, 2010, arbitration claim would be timely made under the federal statute.  28 U.S.C. § 1658(b).

Additionally, as suggested by the Tommerups, perhaps the arbitrators based their decision not on the Tommerups' federal securities claims at all, but on the Tommerups' other common law and statutory claims.  If these alternative methods of proving liability were the basis of the arbitration award, then Waveland's statute of limitations defense was irrelevant to the arbitrator's decision.

The explanation that the arbitration panel did provide is as follows:

1.    The Panel determined that Respondent Waveland Capital failed to supervise Respondent Day and that the Investments were unsuitable. Respondents are jointly and severally liable for and shall pay to Claimants compensatory damages in the sum of $301,875.00, which includes interest in the amount of $87,545.00 calculated from September 1, 2008 through January 13, 2012.

2.    The Panel previously awarded Claimants reasonable attorneys' fees to bring the motions to compel discovery.

12

> Respondents are jointly and severally liable for and shall pay to Claimants the amount of $2,000.00 in attorneys' fees as discovery sanctions.

> 3.   Respondent Waveland Capital is solely liable for and shall pay to Claimants the sum of $25,000.00 as additional discovery sanctions.

> 4.   The parties shall bear all their respective costs including attorneys' fees not specifically allocated.

> 5.   Any and all relief not specifically addressed herein, including punitive damages, is denied.

(ECF No. 4-5 at 10.)  There is simply no way to know which counts were found to be the basis of Waveland's liability.  However, the findings that Waveland failed to supervise Day and that the investments were unsuitable for the Tommerups would also support a conclusion of liability as to

-- the negligence claim and the breach of fiduciary duty claim (three-years statute of limitations, Mont. Code Ann. § 27-2-204, MCA),
-- the claim under the Montana Unfair Trade Practices and Consumer Protection Act claim (Mont. Code Ann. § 27-2-211, two years statute of limitations),
-- the Montana and Utah Securities Act claims (two years statute of limitations, Mont. Code Ann. § 03-10-307(5), and Utah Code Ann. § 61-1-22(7)),
-- the fraud claim (three years statute of limitations under Utah law,

13

> Utah Code Ann. § 78B-2-305(2) and two years statute of limitations under Montana law, Mont. Code Ann. § 27-2-203).

As to these claims, the Tommerups filed their arbitration claim just two years and one month after the investment distributions stopped in September, 2008.  Such claims are subject to equitable tolling under state law.  *See  Ehrman v. Kaufman, Vidal, Hileman & Ramlow, PC*, 246 P.3d 1048, 1052-53 (Mont. 2010); *Chriske v. State ex rel. Dept. of Corrections and Institutions*, 235 P.3d 588, 590 (Mont. 2010); *Seale v. Gowans*, 923 P.2d 1361, 1364-65 (Utah 1996); *Charlesworth v. Reyns*, 113 P.3d 1031, 1037 (Utah App. 2005).  Tommerups and the other investors were told to wait until after October 15, 2008, for a conference call that would explain the lack of distributions, and investors were also given assurances at that time that the investment properties were not in default.  (ECF No. 12-5.)  Tommerups filed their arbitration claims on October 13, 2010, less than two years after the conference call.

On these facts, the arbitrators could have found common law or statutory liability to which no statute of limitations defense applied.  Only one timely claim

was necessary to support the arbitration award, and the arbitration panel could reasonably have found that Waveland was liable as to one of Tommerups' timely claims.


Tommerups' Request for
Post-Award (Prejudgment) Interest

Tommerups request that this Court confirm the arbitration award of $301,875 that was imposed on February 7, 2012, and add to it an imposition of post-award interest at Montana's legal rate of 10%.  (ECF No. 9 at 6.)  They offer FINRA Rule 12904(j)[5] of the arbitration governing rules, which states that "[a]n

---

[5] *FINRA Manual*, Rule 12904(j) provides:
All monetary awards shall be paid within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction.  An award shall bear interest from the date of the award:
- If not paid within 30 days of receipt;
- If the award is the subject of a motion to vacate which is denied; or
- As specified by the panel in the award.
Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s). (ECF No. 9-1 at 2.)

award shall bear interest from the date of the award . . .[i]f the award is the subject

of a motion to vacate which is denied. . . ."  (ECF No. 9-1 at 2.)  *See Kruse v.*

*Sands Brothers & Co., Ltd.*, 226 F.Supp.2d 484 (S.D. N.Y. 2002) (confirming

arbitration award and imposing post-award interest pursuant to predecessor

NASD Rule 10330(h)(1)).  Essentially, FINRA Rule 12904(j), when combined

with FINRA Rule 9554(a),[6] provides that arbitration awards must be paid within

30 days or brokerage firms and associated persons face disciplinary action.

    An exception to the 30-day payment rule is provided to allow a party to file

a motion to vacate the award in district court, but if that motion is denied then the

interest is imposed as of the award date.  FINRA Rule 12904 further states that

"[i]nterest shall be assessed at the legal rate, if any, then prevailing in the state

where the award was rendered, or at a rate set by the arbitrator(s)."  (ECF No. 9-1

at 2.)  This arbitration having been conducted in Helena, Montana, the pertinent

---

    [6] FINRA Rule 9554 provides that if a member or associated person fails to comply with
an arbitration award, FINRA will cancel or suspend the member or associated person's
membership in or registration with FINRA, effectively terminating the broker/dealer's ability to
continue operations.

state law is Montana's, which provides for a legal rate of interest of ten percent. Mont. Code Ann. § 31-1-106(1).

"A judgment confirming an arbitration award is treated similarly to any other federal judgment." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004). "In diversity actions, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law." *American Tel. & Tel. Co. v. United Computer Systems, Inc.*, 98 F.3d 1206 (9th Cir. 1996) (calculating and imposing post-award and post-judgment interest after confirming arbitration award) (citation omitted). The federal rate of interest is set forth at 28 U.S.C. § 1961, which provides that post-judgment interest "shall be calculated . . . at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment." 28 U.S.C. § 1961(a).

Tommerups' Motion for
Rule 11 Sanctions

Tommerups request that this Court find that Waveland's motion to vacate the arbitration award is frivolous and filed for the purpose of delaying payment of the arbitration award. Tommerups request that the Court award their attorney's fees as sanction for this Rule 11 violation. The motion is procedurally correct, because Tommerups served the motion upon Waveland 21 days before filing it, thereby providing Waveland the requisite safe harbor permitting it to reconsider its position by withdrawing or correcting the challenged filing. *See* Rule 11(c)(2), Fed. R. Civ. P. In this case, Waveland did not modify or withdraw its motion to vacate the arbitration award but chose instead to oppose the motion for Rule 11 sanctions.

Sanctions may be imposed under Rule 11, Fed. R. Civ. P., when a court determines that a filing is frivolous, legally unreasonable or brought for an improper purpose. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). Tommerups argue that the motion to vacate the arbitration

award is frivolous and brought for the purpose of delaying payment of the arbitration award.  Waveland states that it has set aside funds for payment of the award and has not brought this action for any improper purpose.  While this Court has some sympathy for the exasperation Tommerups' counsel experiences in being required to litigate what has already been arbitrated, this Court's survey of the "manifest disregard" type of  award vacatur/confirmation cases shows that such 're-litigation' of the dispute is frequently, if not routinely, the essence of such manifest disregard cases.  *See, e.g.*, *Freedom Investors Corp. v. Hadath*, 2012 WL 383944, slip. op. at *4   (S.D. N.Y. Feb. 7, 2012) ("Pinter merely raises here arguments considered and rejected by the panel.").   There is a broad continuum in judicial review of petitions for vacatur on the ground of manifest disregard.  On the one hand, the vacatur petition may be denied because the claimant has but a "barely colorable" claim.  On the other hand, the vacatur petition may be granted because an arbitrator's decision "strains credulity" and therefore a court may be entitled to conclude that the arbitrator willfully flouted the law.  *See Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2nd Cir. 1998).  Although the question of

19

Rule 11 sanctions in this case is a close one, this Court is not persuaded that the petition for vacatur is entirely frivolous and should not have been brought.

Conclusion

Upon review of this record, the Court finds that Waveland fails to meet its burden to show that the arbitration award should be vacated.  There is no gross error on the face of the award nor any evidence of intent to disregard the law. Thus, for the above-stated reasons,

IT IS HEREBY ORDERED that Waveland's Petition to Vacate Arbitration Award (ECF No. 1) is DENIED, and Tommerups' Motion to Confirm Arbitration Award (ECF No. 11) is GRANTED.  The Arbitration Award (FINRA Case Number 10-04616) is hereby CONFIRMED in its entirety:

$  301,875.00 compensatory damages (includes $87,545 pre-award interest)
$      2,000.00 attorney fees as discovery sanction (motion to compel discovery)
$    25,000.00 additional discovery sanctions (payable by Waveland only)

The Court finds that Tommerups are entitled to post-award (pre-judgment) interest at the rate of 10% on the $301,875 arbitration award, from February 7, 2012, to the date judgment enters.

The Court further finds that Tommerups are entitled to post-judgment interest on the $301,875 arbitration award, in accordance with 28 U.S.C. § 1961(a), from the date judgment enters until the judgment is paid in full.

Waveland is jointly and severally liable with Melvin T. Day, II, for the entire arbitration award and all interest thereon, excluding the $25,000 discovery sanction which is payable by Waveland only.

IT IS FURTHER ORDERED that Tommerups' Motion for Rule 11 Sanctions (ECF No. 16) is DENIED.

IT IS FURTHER ORDERED that Tommerups' Motion for Default Judgment against Melvin T. Day, II, and to confirm the arbitration award as against him (ECF No. 34) also is GRANTED.  Mr. Day is jointly and severally liable with Waveland Capital Partners, LLC, for the $301,875 compensatory

21

damages award, the $2,000 discovery sanctions award, and pre-judgment interest and post-judgment interest as described above.

Let judgment enter.

Done and Dated this 11th day of March, 2013.


CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE